1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MACARIO R. AYALA, | ) | 1:12-cv-00400 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN , Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **BACKGROUND**

Plaintiff Macario R. Ayala ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin will be substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 4 & 10.)

1

## FACTS AND PRIOR PROCEEDINGS[3]

Plaintiff filed applications for benefits in October 2008, alleging disability as of March 17, 1997.  AR 109-115.  Plaintiff's applications were denied initially and on reconsideration; he then requested a hearing before an Administrative Law Judge ("ALJ").  AR 68-71, 75-79, 81-83.  ALJ Teresa L. Hoskins Hart held a hearing and subsequently issued an order denying benefits on June 23, 2010, finding Plaintiff was not disabled.  AR 14-23.  On January 25, 2012, the Appeals Council denied review.  AR 1-3.

### 1.   Hearing Testimony

ALJ Hoskins Hart held a hearing on May 20, 2010, in Fresno, California.  Plaintiff appeared and testified; he was assisted by attorney Robert D. Christenson.  Vocational Expert ("VE") Thomas C. Dachelet also testified and Interpreter Blanca Hernandez was present.  AR 33-63.

### (a)   *Plaintiff's Testimony*

Plaintiff came to the United States in 1985 and has a sixth grade education.  AR 47.  Although Plaintiff took English language classes, he was unable to consistently attend because of his work schedule.  AR 47-48.  Consequently, he does not know how to read and write in English.  AR 50.  Plaintiff obtained a driver's license, but it was suspended for driving under the influence.  AR 48.

In 1995, Plaintiff began working at a fiberglass company where he cut fiberglass using heavy equipment.  AR 38.  He worked twelve hours a day and would lift items weighing between thirty to two hundred pounds.  AR 38-39.  Plaintiff was injured on the job when lifting a two hundred pound item with another worker.  AR 38.

After working for the fiberglass company, Plaintiff was employed by a chimney production company for approximately three years.  AR 39-40.  In this position, he operated large

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

machinery, performed some welding, and made and installed parts for chimneys.  AR 39-40, 58.
At this job, Plaintiff lifted about forty pounds.  AR 40.

Over the next several months, Plaintiff worked for temporary agencies and held several
positions.  AR 40-42.  These jobs entailed painting car and airplane parts, as well as lifting heavy
bombs.  AR 40-42.  At these jobs, Plaintiff stood for long periods and lifted between fifteen and
fifty pounds.  AR 40-42.

In 2003, Plaintiff began working for the county fair as a general laborer.  AR 43.  In this
position, he performed general landscaping duties including lawn maintenance, cleaning parking
lots, and other miscellaneous tasks.  AR 43.  Although Plaintiff did not have to lift heavy items
all the time in this position, he felt this job was difficult because he was required to dig into hard
dirt.  AR 43.

After working at the county fair, Plaintiff worked for a carpet company full time for ten
months where he operated a machine, mixed paints and dyes, and helped with the final assembly
of carpeting  AR 43-45.  At this job, Plaintiff lifted paint cans which weighed seventy kilos.  AR
44.  Also, Plaintiff pushed the carpet up tunnels so the carpet could dry, which he considered to
be "heavy work."  AR 45.  After working at the carpet company, Plaintiff did not try to go back
to work since he "felt like he couldn't do it anymore."  AR 45.

When asked to describe a typical day, Plaintiff indicated that he wakes up between six
and ten in the morning.  AR 45.  Plaintiff lives with other people who make meals for him, and
he does not do any chores around the house.  AR 46.  In the past, Plaintiff attempted to wash his
clothes and clean the dishes, but he is unable to do so due to back pain.  AR 47.

Plaintiff does not go out in the community because he is unable to walk for long periods.
AR 46.  He does not have any friends that he spends time with.  AR 46.  Instead of spending time
with others, Plaintiff watches television.  AR 46.  He also reads but can only do so for a short
period of time due to poor vision.  AR 46.  Plaintiff does nothing else throughout the day because

1   he "can't do anything." AR 46-47.  Plaintiff gets "sick" two or three days a week when his sugar

2   gets low, which causes blurry vision.  AR 47, 56.

3          In addition to his diabetes condition, Plaintiff's back and head pain prevent him from

4   working.  AR 47.   He has difficulty lifting and carrying things because he cannot bend down and

5   is unable to pick up heavy items.  AR 50.  Within an eight-hour day, Plaintiff can lift up to fifteen

6   to twenty pounds, but he cannot lift this weight for two to three hours because the movement

7   hurts him.  AR 50.  He can only lift less than ten pounds for two or three hours during an eight-

8   hour day.  AR 50-52.  Plaintiff must change positions frequently; he has to alternate sitting down

9   and standing for periods of ten to fifteen minutes due to the pain from injured discs.  AR 52-53.

10  He also has to recline or lay down several times (more than ten times) a day for twenty to thirty

11  minutes due to the pain as well.  AR 53-55.

12                    **(b)**    *VE Testimony*

13         The VE described Plaintiff's past work as a fiberglass machine operator, DOT[4] 574.682-

14  010 with a SVP[5] of four, semi-skilled at medium level; a general laborer at the county fair

15  (classified as a janitor, cleaner industrial), DOT 381.687-018 with a SVP of two, unskilled at

16  medium level; a carpet job, DOT 599.685-046 with a SVP of four at medium level; an auto parts

17  sprayer and painter (classified as painter's helper), DOT 845.684-014 with a SVP of four, semi-

18  skilled at medium level; a temporary agency worker (identified as laborer, stores), DOT 922.687-

19  058 with a SVP of two, unskilled at medium level; and a machine operator for chimney

20  production, DOT 619.685-062 with a SVP of three, semi-skilled at medium level.  AR 59.

21         The ALJ asked the VE to assume a hypothetical person of the same age, education, and

22  prior work experience as the Plaintiff, who is limited to sedentary exertion.  AR 59.  The VE

23  indicated that such an individual could not perform Plaintiff's prior work, but that he would be

24  able to perform a full range of sedentary work.  AR 59-60.

25  ───────────────

26         [4] "DOT" refers to the Dictionary of Occupational Titles.

27         [5] "SVP" refers to the Specific Vocational Preparation.

28                                                      4

In a second hypothetical question posed by the ALJ, the VE was asked to consider the same individual, who can perform sedimentary work, who can rarely lift, who is unable to stand, sit, or walk for more than thirty minutes without changing positions every ten minutes, and who can rarely bend stoop, crouch, or climb stairs.  AR 60-61.  The VE testified this individual would be unable to work.  AR 61.

In a hypothetical question posed by Plaintiff's counsel, the VE was asked whether the same individual outlined in the second hypothetical would be able to perform Plaintiff's past relevant work who would be absent four days a month.  AR 61.  The VE indicated that such person would be unable to perform any work.  AR 61.

In a final hypothetical question posed by Plaintiff's counsel, the VE was asked to consider whether a person could perform Plaintiff's past relevant work if the person was limited to sedentary work and needed to take more than ten breaks or take reclining breaks that last ten to thirty minutes at a time.  AR 61.  The VE testified that such an individual could not perform Plaintiff's past work.  AR 61.

## 2.   Medical Record

The entire medical record was reviewed by the Court.  AR 203-275.  The relevant medical evidence relates to the physician opinion reports which are outlined below.

### (a)   *Dr. Nguyen, Plaintiff's Treating Physician*

Dr. Nguyen treated Plaintiff several times between March 3, 2009 and April 21, 2010.  AR 237-257, 268-275.  At the first appointment on March 3, 2009, Plaintiff told Dr. Nguyen he wanted permanent disability due to chronic low back pain that was caused by an accident at work on March 17, 1997.  AR 256.  Plaintiff also told the doctor he was unable to work since 1997.  AR 256.  The physical exam demonstrated tenderness in the lumbar spine, negative straight leg raising, and absence of muscle dystrophy.  AR 256-257.  Dr. Nguyen diagnosed Plaintiff with chronic back pain.  AR 256-257.

On March 30, 2009, Dr. Nguyen indicated Plaintiff experienced low back pain and was

able to do light work, in which he could not handle over ten pounds.  AR 254.  Due to the pain, the doctor prescribed Naproxen.  AR 254.  At this appointment, Plaintiff told Dr. Nguyen the last time he worked was in September 2007 as a carpet dryer.  AR 254.  On April 17, 2009, the physical exam demonstrated tenderness in Plaintiff's lower back; Plaintiff stated the pain went from his back to his toes.  AR 252.  Dr. Nguyen prescribed Plaintiff Tylenol #3.  AR 252.

On May 15, 2009, the physical exam showed tenderness on the right side of Plaintiff's upper and lower thoracic spine and the straight leg raising test produced pain at forty-five degrees.  AR 251.  On May 28, 2009, Plaintiff stated he is taking Naproxen and Tylenol #3 and could not lift five pounds, bend over, nor mow the lawn.  AR 248.  The physical exam showed tenderness in Plaintiff's lower back and Plaintiff had difficulty lying down on the table.  AR 248.  In addition, the straight leg test was positive on both sides, but the left leg was not as bad as the right.  AR 248.

On July 2, 2009, Plaintiff reported he experienced lower back pain that goes down to his right leg and toes.  AR 247.  The physical examination showed the left straight leg raising test was negative and right straight leg test was positive, but Plaintiff stated his right toes felt numb.  AR 247.  Dr. Nguyen noted the lumbar spine x-ray on March 13, 2009 showed chronic degenerative changes.  AR 247.  On August 13, 2009, Plaintiff stated he experienced pain in his lower back which radiated pain to his toes; Dr. Nguyen again prescribed Tylenol #3.  AR 246.  On September 15, 2009, Plaintiff indicated his lower back pain went down to his right leg and right toe, and he also felt like the back pain was going up to his neck.  AR 245.  The physical exam showed tenderness of lumbar spine; Dr. Nguyen had Plaintiff take Tylenol #3 and Naproxen.  AR 245.

On October 13, 2009, Dr. Nguyen diagnosed Plaintiff with diabetes mellitus type two.  AR 242.  On October 20, 2009, Dr. Nguyen noted that Plaintiff's diabetes was "better controlled."  AR 241.  There was no mention of Plaintiff's chronic back pain.  AR 241.  Treatment notes in November 2009 through April 2010 show that Plaintiff's diabetes was "well

1   controlled" or "under control."  AR 237, 269-270, 274-275.  Dr. Nguyen continued to diagnose

2   Plaintiff with chronic lower back pain in November 2009 through April 2010.  AR 237, 268-270,

3   274-275.  On Plaintiff's last visit on April 21, 2010, Dr. Nguyen indicated "patient [is] doing

4   very well," and he told Plaintiff to continue all current medications.  AR 268.

5          In a Residual Functional Capacity ("RFC") Questionnaire dated December 16, 2009, Dr.

6   Nguyen diagnoses reflects chronic low back pain and diabetes mellitus type two.  AR 259.

7   Plaintiff's prognosis was poor.  AR 259.  His symptoms included pain and fatigue.  AR 259.  The

8   doctor characterized Plaintiff's pain as constant with numbness in his right toes and severe pain

9   going from his lower back to his right toes.  AR 259.  When asked to identify the clinical studies

10  in support of his opinion, Dr. Nguyen relied on an MRI that showed a disc bulge of L4-L5,

11  Plaintiff's tenderness in his lumbar spine, and his observation that Plaintiff had difficulty getting

12  up from the examining table.  AR 260.  It was noted that Plaintiff had been prescribed Tylenol

13  #3, but that it did not help much.  AR 260.  With regard to back pain treatment, Dr. Nguyen

14  noted that Plaintiff would be evaluated by a back surgeon, however, there is no evidence that Dr.

15  Nguyen referred Plaintiff to a back surgeon, nor that Plaintiff ever saw a back surgeon.  AR 236-

16  275.  The doctor indicated Plaintiff's impairments could be expected to last more than twelve

17  months and Plaintiff was not a malingerer.  AR 260.

18         The doctor further opined that Plaintiff's pain, fatigue, and other symptoms constantly

19  interfere with the attention and concentration needed to perform even simple work tasks.  AR

20  260.  As such, Plaintiff could only concentrate for an hour at one time.  AR 260.  Dr. Nguyen

21  indicated Plaintiff was "[i]ncapable of even 'low stress' jobs" due to Plaintiff's severe back pain.

22  AR 261.  In a competitive workplace environment, the doctor opined that Plaintiff could walk

23  one block without rest or severe pain, sit for thirty minutes at one time, and stand for fifteen

24  minutes at one time.  AR 261.  In an eight-hour workday, Dr. Nguyen indicated Plaintiff could sit

25  for about two to four hours, and stand or walk for about four hours.  AR 261.  Next, the doctor

26  indicated Plaintiff would need to "walk around" during an eight-hour workday and would need to

27

28                                              7

do so every thirty minutes for ten minutes at a time.  AR 261.  In addition, Dr. Nguyen noted

Plaintiff would need a job that permits him to switch from sitting, standing, or walking, and

would allow him to take frequent unscheduled breaks during an eight-hour workday.  AR 262.

Finally, Dr. Nguyen opined that Plaintiff could rarely lift and carry ten pounds or less, and

could never lift and carry twenty or fifty pounds.  AR 262.  He could frequently look down, turn

his head right or left, look up, and hold his head in a static position.  AR 262.  Plaintiff could

rarely stoop, crouch, and climb stairs but could never climb ladders.  AR 262.  As a result, Dr.

Nguyen opined that Plaintiff would likely be absent from work more than four days per month.

AR 263.  Dr. Nguyen indicated the above limitations became effective a year and a half before

December 16, 2009, which was based on information provided by Plaintiff.  AR 263.

### (b)   Dr. Nowlan, Examining Physician

On November 21, 2008, Plaintiff saw James A. Nowlan, M.D., State agency examining

physician, for an internal medicine evaluation.  AR 203-206.  Plaintiff complained of back pain

that extends from his neck to his lower back and poor vision in his right eye.  AR 203.  Plaintiff

stated he stays at home due to the pain.  AR 203.  Plaintiff told Dr. Nowlan he was not taking any

medications.  AR 203.  Dr. Nowlan opined that Plaintiff "looked well."  AR 203.  The doctor

noted that Plaintiff's pupils were equal, round, and reactive to light and the eye examination was

normal.  AR 204.  Dr. Nowlan also noted that Plaintiff had a slow painful walk and was unable

to walk on his heels and toes, but Plaintiff's Romberg and finger-to-nose tests were normal.  AR

204. With regard to Plaintiff's movement, the doctor noted Plaintiff experienced a marked pain

response and any type of movement caused a great deal of pain, or at least a vigorous pain

response.  AR 205.  Dr. Nowlan diagnosed Plaintiff with a muscle strain of his back.  AR 205.

Dr. Nowlan opined that Plaintiff could stand and walk for four hours and sit for an unlimited

amount of time in an eight-hour day.  AR 205.  He also opined that Plaintiff could frequently lift

ten pounds, had occasional postural limitations, and that climbing must be avoided entirely.  AR

205.

1

(c)    *Dr. Lopez, Nonexamining Physician*

2      On December 12, 2008, C. Lopez, M.D., State agency non-examining physician,

3  completed a Physical Residual Functional Capacity Assessment.  AR 207-211.  Dr. Lopez opined

4  that Plaintiff could frequently lift and/or carry ten pounds, stand and/or walk for at least two

5  hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, push

6  and/or pull without limitations.  AR 208.  The doctor also indicated that Plaintiff could

7  occasionally climb, balance, stoop, kneel, crouch, and crawl.  AR 209.  Dr. Lopez noted that

8  Plaintiff does not have any visual limitations.  AR 209.

9      **3.      The Disability Determination Standard and Process**

10     To qualify for benefits under the Social Security Act, Plaintiff must establish that he is

11 unable to engage in substantial gainful activity due to a medically determinable physical or

12 mental impairment that has lasted or can be expected to last for a continuous period of not less

13 than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

14 disability only if:

15
16         his physical or mental impairment or impairments are of such
           severity that he is not only unable to do his previous work, but
           cannot, considering his age, education, and work experience,
17         engage in any other kind of substantial gainful work which exists
           in the national economy, regardless of whether such work exists in
           the immediate area in which he lives, or whether a specific job
18         vacancy exists for him, or whether he would be hired if he applied
           for work.
19

20     42 U.S.C. § 1382c(a)(3)(B).

21     To achieve uniformity in the decision-making process, the Commissioner has established

22 a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §

23 404.1520(a)-(f).  The ALJ proceeds step by step in order, and stops upon reaching a dispositive

24 finding that the claimant is disabled or not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must

25 consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

26     The ALJ is required to determine (1) whether a claimant engaged in substantial gainful

27 activity during the period of alleged disability; (2) whether the claimant had medically-

28                                              9

determinable "severe" impairments;[6] (3) whether these impairments meet or are medically

equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4)

whether the claimant retained the RFC to perform his past relevant work;[7] and (5) whether the

claimant had the ability to perform other jobs existing in significant numbers at the regional and

national level.  20 C.F.R. § 404.1520(a)-(f).

### 4.        Summary of the ALJ's Findings and Decision

Using the five-step sequential evaluation process outlined above, the ALJ determined that

Plaintiff did not meet the disability standard.  AR 14-23.  More particularly, the ALJ found that

Plaintiff engaged in substantial gainful activity since March 17, 1997, after his alleged date of

disability.[8]  AR 16.  Further, the ALJ identified lumbar degenerative disc disease as a severe

impairment.  AR 16.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairment

did not meet or exceed any of the listed impairments.  AR 17.

Based on a review of the entire record, the ALJ determined that Plaintiff could not

perform his past relevant work but he has the RFC to perform the full range of sedentary work.

AR 17.  After applying the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix

2 ("the grids"), the ALJ determined that there are a significant number of jobs in the national

economy that the claimant can perform and consequently, Plaintiff did not meet the disability

standard.[9]  AR 22.

---

[6] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).

[7] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

[8] The ALJ found that Plaintiff had engaged in substantial gainful activity in 2000 and 2001, but nonetheless the five step disability process was completed.  AR 16.

[9] Since Plaintiff was born on April 9, 1967 and was 41 years old at the time of his application, Plaintiff is defined as a younger individual aged 18-44 and application of the grids is appropriate.

1    Here, Plaintiff argues that the ALJ erred by: (1) failing to adopt the medical opinion of

2  Dr. Chi Nguyen, Plaintiff's treating physician and (2) giving insufficient reasons for rejecting

3  Plaintiff's testimony.  (*See* Docs. 12 & 16.)

4                                    **STANDARD OF REVIEW**

5           Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

7  this Court must determine whether the decision of the Commissioner is supported by substantial

8  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

9  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

10  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

12  401.  The record as a whole must be considered, weighing both the evidence that supports and

13  detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.

14  1985).  In weighing the evidence and making findings, the Commissioner must apply the proper

15  legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must

16  uphold the Commissioner's determination that the claimant is not disabled if the Secretary

17  applied the proper legal standards, and if the Commissioner's findings are supported by

18  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

19  Cir. 1987).

20                                         **DISCUSSION**

21       **1.**       **The ALJ Properly Discounted Dr. Nguyen's Opinion**

22           Plaintiff argues that since Dr. Nguyen is Plaintiff's treating physician, Dr. Nguyen's

23  opinion should have been given greater weight.  (Doc. 12 at 7-11.)  The Commissioner contends,

24  however, that the ALJ properly considered all of the medical evidence and properly rejected Dr.

25  Nguyen's opinion.  (Doc. 15 at 19-23.)

26  ///

27

28                                              11

1          (a)      *The Legal Standards*

2          Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

3    who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

4    (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

5    physicians).   As a general rule, more weight should be given to the opinion of a treating source

6    than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

7    647 (9th Cir. 1987).   At least where the treating doctor's opinion is not contradicted by another

8    doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

9    1391, 1396 (9th Cir. 1991).   Even if the treating doctor's opinion is contradicted by another

10   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

11   reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

12   F.2d 499, 502 (9th Cir. 1983).

13          The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

14   that justifies the rejection of the opinion of either an examining physician or a treating physician.

15   *Pitzer v. Sullivan*, 908 F.2d 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir.

16   1984).   In some cases, however, the ALJ can reject the opinion of a treating or examining

17   physician, based in part on the testimony of a nonexamining medical advisor.  *E.g., Magallanes*

18   *v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th

19   Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).   For example, in *Magallanes*, the

20   Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely

21   on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's

22   treating physicians . . . ."  *Magallanes*, 881 F.2d at 752.   Rather, there was an abundance of

23   evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results,

24   contrary reports from examining physicians, and testimony from the claimant that conflicted with

25   her treating physician's opinion.  *Id*. at 751-52.

26          If a treating physician's opinion is not given controlling weight because it is not well

27

28                                                   12

supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. C.F.R. § 404.1527(d)(2).  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

**(b)**     ***The ALJ's Findings***

In rejecting Dr. Nguyen opinion, ALJ Hoskins Hart stated the following:

> As for the opinion evidence, in addition to the objective medical evidence, the undersigned has considered statements from treating and examining physicians in assessing the severity of claimant's impairments, as required by 20 CFR 404.1527; 416.927 and SSR 96-2p.  The undersigned has given significant weight to the opinion of the State agency medical consultants that the claimant retains Sedentary residual functional capacity and this includes the capacity for occasional postural functions.  Similarly, the undersigned has given significant weight to the consultative evaluator's opinion except for his statements of postural limitations.  The consultive examiner's opinion that claimant retains a postural limitation that excludes all climbing as it infers no capacity for even occasional stairs or ramp climbing and is given little weight.  Further, the undersigned has given little weight to the opinion of Dr. Nguyen.  This opinion is not supported by his own treatment notes nor the objective medical findings.  The treatment notes demonstrate that the claimant's diabetes is under control.  He demonstrated only mild abnormal findings at the physical exams and on diagnostic tests.  In addition, Dr. Nguyen's opinion is inconsistent with the substantial evidence in the record. Notably, Dr. Nguyen's opinion relies heavily on the claimant's subjective statements rather than objective medical findings.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> In sum, the above residual functional capacity assessment is supported by the medical record, the opinions of the consultive evaluator and State agency medical consultants to the extent supported by treatment notes and the record as a whole.

1   AR 20-21, internal citations omitted.

2       **(c)**   ***Analysis***

3       Here, ALJ Hoskins Hart gave specific and legitimate reasons for affording Plaintiff's

4   treating physician's opinion reduced weight.  AR 17-21.  As part this analysis, the ALJ gave a

5   detailed summary of the medical records and outlined the basis for her conclusions.  As

6   discussed below, the ALJ's decision is supported by substantial evidence.

7       First, in rejecting Dr. Nguyen's opinion, the ALJ gave greater weight to the consultive

8   examining and non-examining physicians' opinions, with the exception of not including the

9   examining physician's opinion regarding postural limitation excluding all climbing since it infers

10  no capacity for even occasional stairs or ramp climbing.  AR 20.  Both Dr. Nowlan and Dr.

11  Lopez found that Plaintiff was capable of performing sedentary work.  AR 203-211.  In

12  particular, Dr. Nowlan described no limitation as to sitting and no significant limitations as to

13  standing and walking since Dr. Nowlan opined Plaintiff can do so for four hours.  AR 205.  Dr.

14  Lopez reached a similar opinion regarding limitations, such as sitting for six hours in an eight-

15  hour workday and standing and walking for at least two hours in an eight-hour work day.  AR

16  208.  Also, both Dr. Nowlan and Dr. Lopez determined that Plaintiff could frequently lift ten

17  pounds.  AR 205, 208.  The ALJ's reliance on the consultive examining physician Dr. Nowlan

18  and non-examining physician Dr. Lopez's opinions constitutes substantial evidence supporting

19  the ALJ's RFC determination.  *Tonapetyan v. Halter*, 242 F.3d 1144,1149 (9th Cir. 2001)

20  (examining physician's opinion alone constitutes substantial evidence because it rests on

21  independent examination); *see Thomas v, Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The

22  opinions of non-treating or non-examining physicians may also serve as substantial evidence

23  when the opinions are consistent with independent clinical findings or other evidence in the

24  record."); *see also* 20 C.F.R. § 404.1527(d)(3) (varying the weight given to nonexamining source

25  opinions "depend[ing] on the degree to which they provide supporting explanations for their

26  opinions").

27

28                                          14

In addition, the ALJ correctly noted that Dr. Nguyen's opinion was not well-supported by his own treatment notes nor the objective medical findings.  For example, the ALJ specifically noted Dr. Nguyen's treatment notes demonstrated Plaintiff's diabetes was under control and Plaintiff only demonstrated mild abnormal findings at the physical exams and on diagnostic tests. AR 20-21, 237-257, 265-266, 268-275.  A review of the medical records supports these findings. AR 20-21, 237-257, 265-266, 268-275.

Specifically with regard to inconsistencies in Dr. Nguyen's findings and Plaintiff's diabetes, the RFC Questionnaire completed on December 16, 2009 by Dr. Nguyen indicated that Plaintiff's prognosis was "poor."  AR 259.  However, Dr. Nguyen specifically noted on progress notes that Plaintiff's diabetes was "better controlled" on October 20, 2009, was "well controlled" on November 4, 2009, and was "under control" on the same day Dr. Nguyen filled out the RFC questionnaire.  AR 237, 241, 275.  Similarly, Dr. Nguyen indicated on March 20, 2009 that Plaintiff was able to do light work, not handling more than ten pounds.  AR 19-20, 254. However, on the RFC questionnaire, the doctor reported  that Plaintiff was "[i]ncapable of even 'low stress' jobs" and *rarely* lifting and carrying ten pounds or less.  AR 261-262.   Thus, Dr. Nguyen's treatment notes do not support and even contradict his opinion regarding Plaintiff's limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ disregarded treating doctor's opinion when his opinion contradicted his own findings).  Rejecting an opinion that contains internal inconsistences is a specific and legitimate reason to discount the opinion. *Roberts*, 66 F.3d at 184 (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).

A review of medical records related to Plaintiff's degenerative disc disease likewise supports the ALJ's finding of mild abnormalities.  Plaintiff's x-rays taken on March 12, 2009 revealed mild spondylolisthesis of L4 and L5.  AR 19, 255.  Lumbar spine MRI results only showed congenital vertebral abnormality causing spondylolisthesis and mild to moderate degenerative disc disease with no evidence of disc herniation or stenosis.  AR 21, 238-239, 265-

266.  Also, the medical records do not show any evidence of muscle atrophy, motor, or sensory loss.  AR 21, 234-275.  Furthermore, during a patient visit on April 21, 2010, Dr. Nguyen noted that "patient [is] doing very well."  AR 268.  The incongruity between a treating physician's opinion and his patient's medical records is a specific and legitimate reason to discount a treating physician's opinion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Magallanes*, 881 F.2d at 751 (a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion).

Finally, the ALJ specifically indicated Dr. Nguyen's opinion relies heavily on Plaintiff's subjective statements instead of the objective medical findings.  AR 203-211, 234-275.  The Court has reviewed the ALJ's credibility assessment and as discussed below, finds it is supported by substantial evidence.  Since Plaintiff's statements are not credible and Dr. Nguyen relied heavily on Plaintiff's discredited subjective statements, the ALJ correctly rejected Dr. Nguyen's opinion on this basis.  AR 203-211, 234-275.  *Thomas*, 278 F.3d at 957; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-report that have been properly discounted as incredible.").

## 2.    The ALJ's Credibility Finding is Supported by Substantial Evidence

Plaintiff contends ALJ Hoskins Hart failed to provide clear and convincing reasons for rejecting his testimony.  (Doc. 12 at 11-13.)  In response, the Commissioner asserts the ALJ's credibility findings are supported by substantial evidence.  (Doc. 15 at 15-19.)

### (a)    *The Legal Standards*

A two step analysis applies at the administrative level when considering a claimant's credibility.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.* at 1281-1282.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's

testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").

An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

**(b)**     ***Analysis***

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff suffered from the severe impairment of lumbar degenerative disc disease.  AR 16.  She further found that:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.

17

AR 18.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-82.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended).  When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of those symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he or she must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-46.

Here, the ALJ made several specific credibility findings:

> The undersigned considered but granted little probative weight to the claimant's testimony.  His statements appear exaggerated and/or motivated by secondary factors.  While the claimant alleged disability onset date March 17, 1997, he was able to productively work until 2007.  The claimant did not start a medical treatment until March 2009, after he was denied his disability claim upon reconsideration.  He stated to the consultive evaluator that he did not take prescription medications.  He was able to do "light work" on March 30, 2009, but on May 28, 2009 he stated that he could not lift even 5 pounds.  Significantly, the medical record shows no evidence of muscle atrophy, motor or sensory loss.  Lumbar spine MRI demonstrated congenital vertebra abnormality causing spondylolisthesis and the other mild to moderate degenerative disc [disease] with no evidence of disk herniation or stenosis.  Apparently, the claimant has had and worked with a congenital vertebral abnormality his entire life without significant treatment sought despite his medium exertion work demands or greater.  These discrepancies and inconsistencies do not support the claimant's ultimate allegation of disability. . . .
>
> In sum, the above residual functional capacity assessment is supported  by the medical record, the opinions of the consultive evaluator and State agency medical consultants to the extent supported by treatment notes and the record as a whole.

AR 21, internal citations omitted.

The ALJ provided clear and convincing reasons that are supported by the record when concluding Plaintiff's testimony was not credible.  AR 21.  First, the ALJ found that Plaintiff's

statements appear exaggerated, inconsistent, and/or motivated by secondary factors.  AR 21.

Specifically, the ALJ noted Plaintiff's alleged disability began on March 17, 1997, but he worked

as recently as 2007.  AR 21, 109, 254, 256.  Similarly, the ALJ noted that on March 30, 2009,

Plaintiff was able to do light work, yet on May 28, 2009, Plaintiff stated he could not lift even

five pounds.  AR 21, 248, 254.  *Bray v. Commissioner*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In

reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's

testimony and his or her conduct, daily activities, and work record, among other factors."); *see

also* 20 C.F.R. § 404.1529 (ALJ may consider claimant's ability to work in assessing claimant's

credibility).

Second, Plaintiff only began medical treatment after his disability claim was denied and

he told the consultative examiner he did not take prescription medications.  AR 21, 75-79, 203,

256-257; *Fair*, 885 F.2d at 603 (an ALJ can rely on evidence of "an unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment" to find a pain

allegation incredible); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is

permitted to consider lack of treatment in his credibility determination.").

Third, the ALJ found that the medical evidence did not support Plaintiff's alleged

symptoms.  AR 21.  This finding is supported by substantial evidence as outlined above in the

medical opinion analysis and is an acceptable basis on which to reject a claimant's testimony.

*See*, *e.g., Morgan v. Commissioner v. Social Security Administration*, 169 F.3d 595, 600 (9th Cir.

1999) (conflict between claimant's subjective complaints and the objective medical evidence in

the record is a specific and substantial reason that undermines a claimant's credibility); *Johnson*,

60 F.3d at 1434 (inconsistencies between the record and medical evidence supports a rejection of

a claimant's credibility; no medical treatment or a conservative level of medical treatment has

been found to suggest a lower level of pain and functional limitations); *see Tidwell v. Apfel*, 161

F.3d 599, 601-02 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests

reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms);

*see* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

Finally, although the records indicate Plaintiff has a chronic problem, the ALJ correctly noted that Plaintiff "has had and worked with a congenital vertebral abnormality his entire life without significant treatment sought despite his medium exertion work demands or greater." AR 21, 38-56. This statement is indeed true as evidenced by Plaintiff's history of employment until 2007. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ considered claimant's lack of "muscular atrophy or any other physical signs of an inactive, totally incapacitated individual" in weighing claimant's ability to work.).

The ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester*, 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Accordingly, here, the ALJ's findings are supported by substantial evidence and are free of legal error.

///

///

///

///

///

///

///

///

///

20

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff, Macario R. Ayala.

IT IS SO ORDERED.

**Dated:    July 8, 2013**                          **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE